# IN THE UNTED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIRBYSA JAMES<br>5706 Warrington Ave.<br>Philadelphia, PA 19143 | : <br>: <br>: <br>: | CIVIL ACTION |
| Plaintiff, | : <br>: | No.: |
| v. | : <br>: | **JURY TRIAL DEMANDED** |
| DEEP ROOTS CHARTER SCHOOL<br>3556 Frankford Ave.<br>Philadelphia, PA 19134 | : <br>: <br>: <br>: | |
| Defendant. | : <br>: | |

## CIVIL ACTION COMPLAINT

Kirbysa James (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Deep Roots Charter School (hereinafter "Defendant") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq.*), the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practice Ordinance ("PFPO").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA and the PFPO are included for notice purposes only. Plaintiff intends to amend her instant lawsuit to include such claims once her administrative remedies are fully exhausted.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant is a non-profit domestic corporation which owns and operates a charter school at the above-captioned address in Philadelphia, PA.

8. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is a black (African-American) female.

11. Plaintiff was hired by Defendant as a Fourth Grade teacher on or about July 29, 2019 until her unlawful termination on November 20, 2020, as discussed *infra.*

12. During Plaintiff's employment with Defendant, she was directly and indirectly supervised by various individuals, including Ivan Estevez (Instructional Coach) and George Logan Blyler (Principal).

13. Plaintiff has, and continues to suffer from, anxiety, depression, migraines, back and knee conditions, and a hernia (which has required surgery). Plaintiff's conditions, at times, prevent her from engaging in some daily life activities, including but not limited to climbing stairs, walking, performing manual tasks, engaging in social interaction and sleeping (among other daily lift activities).

14. Despite Plaintiff's health conditions and limitations, she was still able to perform the essential functions of her job well with Defendant.

15. However, throughout Plaintiff's employment with Defendant, she did request various medical accommodations for her disabilities, including but not limited to: (1) intermittent medical leave; (2) the ability to excuse herself from Zoom meetings or morning huddles (on scarce occasions); and (3) the ability to work on a lower floor of the building (among other accommodation requests).

16. By way of specific example, but not intending to be an exhaustive list:

   a. In 2019 and 2020, Plaintiff requested intermittent days off to attend doctors' appointment for her health conditions;

   b. In 2019 and 2020, Plaintiff requested intermittent time off from work to care for her health conditions when she experienced flare ups;

   c. In August of 2020, Plaintiff had a flare up of her hernia, anxiety and depression, and was required to miss a Zoom meeting;

   d. In February of 2020, Plaintiff had an emotional breakdown (a flare up her anxiety and depression) owing to a death in her family the night before and was required to leave a morning huddle early; and

   e. In March of 2020, Plaintiff requested that if Defendant's leadership wanted her to physically return to work early after undergoing a medical procedure, she would need them to accommodate her by allowing her to work on the lowest level of the building.

17. In response to Plaintiff's requests for various medical accommodations, she was met with hostility and animosity from Defendant's management. For example:

   a. Plaintiff was penalized and reprimanded for taking time off related to doctors' appointments to the extent that Plaintiff felt compelled to reschedule doctors' appointments and/or cancel them as a result of Defendant's management's intimidating behavior;

b. In or about October of 2019, Plaintiff was issued a discriminatory Performance Evaluation wherein Defendant relied upon Plaintiff's requests for time off (one of which was related to her disabilities) as a reason to issue her the negative evaluation;

c. In February of 2020, Plaintiff was issued another unwarranted Performance Evaluation and was placed on a discriminatory and retaliatory Performance Improvement Plan ("PIP") – which Plaintiff refused to sign on two difference occasions;

d. Plaintiff was informed in August of 2020 that if she had to leave a Zoom meeting early without giving enough notice, she would be disciplined – even though Plaintiff had informed Defendant's management that her need to leave was a result of her mental health conditions; and

e. On March 13, 2020, Plaintiff underwent hernia surgery on a professional development day. March 12, 2020 was the last day children reported to school due to the Covid-19 pandemic. Rather than engaging in the interactive process with Plaintiff to see if she could work remotely (like every other teacher was doing after March 13th) or even ask her when she was able to return, Defendant automatically placed Plaintiff on Short Term Disability, without even receiving any paperwork from her physician.

18. As a result, Plaintiff expressed concerns of disability discrimination to Defendant's management, including but not limited to Blyler and Human Resources Manager, Ashley McGrath, however, Plaintiff's concerns were not properly addressed and instead, they

5

took her concerns and made them into an "instructional goal" for her labeled, "communication/ personal health."

19. In addition to the discriminatory and retaliatory treatment that Plaintiff received from Defendant's management regarding her disabilities and need for accommodations, Plaintiff was also subjected to disparate treatment as a result of her race by Defendant's management.

20. The aforesaid racially disparate and discriminatory treatment consisted of Plaintiff: (1) having policies selectively enforced against her; (2) being subjected to a different standard than non-black employees as it pertained to "being engaged" in Professional Development ("PD") sessions; (3) not being provided with proper training; (4) not being provided with consistent support (on a personal and professional level) which was provided to non-black employees; (5) being held to a different standard than non-black employees as it pertained to reprimanding children; and (6) being denied the same and/or similar health accommodations that Plaintiff had requested/required to non-black employees (which were not given to Plaintiff).

21. Plaintiff expressed several times throughout her employment that she felt discriminated against by Defendant's management. However, rather than properly investigate and/or remedy her concerns, Defendant's management instead subjected her to retaliation, including but not limited to, issuing her baseless performance evaluations and placing her on a PIP (in February of 2020).

22. Plaintiff's aforesaid PIP was completely pretextual as: (1) it was issued without first providing Plaintiff with coaching similar to that received by her non-black counterparts; (2) Defendant did not provide Plaintiff with any discipline or documentation advising her of her failure to perform certain tasks; and (3) Plaintiff was given no time for adjustment.

23. Defendant's discrimination and retaliation came to a head in October of 2020, after attending a PD session which Plaintiff found to be racially offensive. Despite being encouraged to "speak out" about how she felt by Nikki Odom-Cooper (Dean of Culture), Plaintiff was later retaliated against and subjected to a hostile work environment by Odom-Cooper and other members of Defendant's management for expressing her concerns about this PD session.

24. To provide further detail, Defendant's staff was required to attend a PD session ran by a consulting group called LiberatED. The title of the course was "Becoming Anti-Racist." Plaintiff expressed initial concerns about this consulting group to Odom-Cooper, to which she encouraged Plaintiff to speak out about her concerns.

25. Following this PD session, Plaintiff again expressed concerns to Estevez that she believed that the course was racially offensive. Estevez also encouraged Plaintiff to speak out about her concerns and stated that it was the only that way Blyler was going to listen. Therefore, at the encouragement of Defendant's leadership, Plaintiff sent an email to staff and management on October 28, 2020 stating (in part) that the course itself was both offensive and racist.

26. Following Plaintiff sending her aforesaid email, she received several messages from other staff members (both black and non-black) thanking her for speaking out and telling her that they felt the same way about the aforesaid PD session.

27. Plaintiff, however, received no apology from Defendant's management regarding how the PD session made her (and others) feel racially offended. Instead, Blyer sent an email to the team thanking Plaintiff for "opening the floor for shared reflections on Wednesday's LiberatED PD session" and then proceeded to tell the entire school that he would be meeting with Plaintiff one-one-one.

28. Blyler completely ignored the fact that Plaintiff was offended by the PD session and that she found the term "Becoming Anti-Racist" to be racially offensive towards black people, as he used this term again in his email.

29. Plaintiff expressed her disappointment in a follow-up email to staff and management on October 30, 2020. As part of the conclusion to Plaintiff's email, she stated: "I expressed my offense and no apology was issued. A grave offense that was, and is, centered around everyone being informed on how not to hate People of Color. I AM A PERSON OF COLOR WHO IS SCREAMING THAT SHE WAS OFFENDED (crying)."

30. In addition to receiving no apology or even an acknowledgment of her concerns regarding racial insensitivity, Plaintiff was treated in a hostile manner by several members of Defendant's management following her email.

31. For example, on October 30, 2020, Francine Tucker (Dean of Behavior) sent a scathing email to the entire team and claimed (among other things) that Plaintiff's initial email "attacked the moral of the school," that Plaintiff's concerns were handled in a way that "was not in the best interest of any of us as a collective" and that Plaintiff's email was used to "put people on blast and make people feel uncomfortable."

32. In addition to Tucker's email, Plaintiff was also contacted by her directly on another teacher's cell phone. During this phone call on November 1, 2020, Plaintiff was berated by Tucker, cursed at and yelled at. Tucker also insulted Plaintiff on numerous occasions during this phone call and stated that: Plaintiff was unprofessional; she did not want to work at the school anymore if Plaintiff is there; and she regretted referring Plaintiff to Defendant. Her behavior was astonishing to Plaintiff and triggered a flare up of her mental health condition.

33. The next day, Plaintiff had a scheduled one-to-one meeting with Blyler, McGrath, and Odom-Cooper to discuss Plaintiff's October 28, 2020 email. On November 5, 2020, Plaintiff met with Blyler, McGrath and Tucker to discuss Tucker's behavior from the night of November 1, 2020. Tucker denied her actions and Defendant's management did not press further or lodge any type of investigation.

34. Instead, the meeting turned into a session of berating Plaintiff about her email. Plaintiff was told to put herself in Tucker's shoes and try to understand how her emails made Tucker feel (as if Plaintiff was somehow the one attacking her). Plaintiff had to end the meeting because she felt targeted and harassed – which triggered her mental health conditions.

35. Following this meeting, Plaintiff was scheduled for a Zoom meeting with Defendant's management. During this Zoom meeting, Plaintiff was questioned about her student step test assessments. Plaintiff was questioned how long it would take her to do a test; how long it took her to enter the data; and what steps she took when performing this test virtually. Being that it is quite hard to do this test virtually and Plaintiff was provided with no training on how to do so, she did the best that she could. (Notably, following Plaintiff's discriminatory/retaliatory termination, Defendant's management conducted a training session on how to do a virtual step-test assessment).

36. Furthermore, when answering Defendant's management's questions, Plaintiff consistently informed them that the answers would vary depending on the test. Regardless of this answer, Defendant's management continued to pressure Plaintiff into giving them a definite answer (which they presumably used against her in making the decision to terminate her employment).

37. The day after this Zoom meeting with Defendant's management wherein Plaintiff was questioned about student step test assessments and only approximately three (3) weeks after informing Defendant that she was racially offended by a PD session promoted by them, Plaintiff was informed that she was being terminated from her employment with Defendant. Plaintiff was told that her termination was the alleged result of an internal investigation regarding her integrity with student assessments.

38. Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her: disabilities; requests for accommodations; race; and/or complaints of race discrimination.

## COUNT I
## Violations of 42 U.S.C. Section 1981
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate and demeaning treatment, discipline, selective enforcement of policies, and targeted harassment because of her race and complaints about racial discrimination.

41. Plaintiff believes and therefore avers that she was issued pretextual discipline and was ultimately terminated from her employment with Defendant because of her race.

42. These actions as aforesaid constitute unlawful discrimination and a hostile work environment under Section 1981.

## COUNT II
## Violations of Title VII
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff repeats, reasserts and realleges each and every allegation of Count I of this Complaint, *supra*, as they constitute identical violations of Title VII.

45. These actions as aforesaid constitute violations of Title VII.

## COUNT III
## Violations of the ADA
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;
[3] Failure to Accommodate; and [4] Hostile Work Environment)**

46. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47. Plaintiff was denied certain reasonable accommodations by Defendant which she required as a result of her disabilities, and Defendant failed to engage in the interactive process, as set forth *supra*.

48. Plaintiff was also subjected to a hostile work environment while employed by Defendant due to her actual/perceived/record of disabilities and/or in retaliation for requesting reasonable accommodations through disparate treatment, discriminatory comments, pretextual discipline, and demeaning and/or discriminatory treatment towards her.

49. Plaintiff was ultimately terminated from her employment with Defendant because of: [1] her actual and/or perceived disabilities; [2] her record of impairment; [3] her requested accommodations, which constitutes unlawful retaliation; and/or [4] Defendant's refusal to accommodate Plaintiff.

50. These actions as aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

_____
Ari R. Karpf, Esquire
Adam C. Lease, Esquire
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
*Attorneys for Plaintiff*

Date: February 19, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CASE MANAGEMENT TRACK DESIGNATION FORM

Kirbysa James : CIVIL ACTION
v. :
Deep Roots Charter School : NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 2/19/2021 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __5706 Warrington Avenue, Philadelphia, PA 19143__

Address of Defendant: __3556 Frankford Avenue, Philadelphia, PA 19134__

Place of Accident, Incident or Transaction: __Defendant's place of business__

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __2/19/2021__  _____/s/_____  ARK2484 / 91538
                      *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Ari R. Karpf__, counsel of record *or* pro se plaintiff, do hereby certify:

[X] Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: __2/19/2021__  _____/s/_____  ARK2484 / 91538
                      *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JAMES, KIRBYSA

**(b)** County of Residence of First Listed Plaintiff: Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS
DEEP ROOT CHARTER SCHOOL

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- 1 U.S. Government Plaintiff
- X 3 Federal Question *(U.S. Government Not a Party)*
- 2 U.S. Government Defendant
- 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- 110 Insurance
- 120 Marine
- 130 Miller Act
- 140 Negotiable Instrument
- 150 Recovery of Overpayment & Enforcement of Judgment
- 151 Medicare Act
- 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- 153 Recovery of Overpayment of Veteran's Benefits
- 160 Stockholders' Suits
- 190 Other Contract
- 195 Contract Product Liability
- 196 Franchise

**TORTS**

*PERSONAL INJURY*
- 310 Airplane
- 315 Airplane Product Liability
- 320 Assault, Libel & Slander
- 330 Federal Employers' Liability
- 340 Marine
- 345 Marine Product Liability
- 350 Motor Vehicle
- 355 Motor Vehicle Product Liability
- 360 Other Personal Injury
- 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- 365 Personal Injury - Product Liability
- 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- 370 Other Fraud
- 371 Truth in Lending
- 380 Other Personal Property Damage
- 385 Property Damage Product Liability

**REAL PROPERTY**
- 210 Land Condemnation
- 220 Foreclosure
- 230 Rent Lease & Ejectment
- 240 Torts to Land
- 245 Tort Product Liability
- 290 All Other Real Property

**CIVIL RIGHTS**
- 440 Other Civil Rights
- 441 Voting
- X 442 Employment
- 443 Housing/ Accommodations
- 445 Amer. w/Disabilities - Employment
- 446 Amer. w/Disabilities - Other
- 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- 463 Alien Detainee
- 510 Motions to Vacate Sentence
- 530 General
- 535 Death Penalty

*Other:*
- 540 Mandamus & Other
- 550 Civil Rights
- 555 Prison Condition
- 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- 625 Drug Related Seizure of Property 21 USC 881
- 690 Other

**LABOR**
- 710 Fair Labor Standards Act
- 720 Labor/Management Relations
- 740 Railway Labor Act
- 751 Family and Medical Leave Act
- 790 Other Labor Litigation
- 791 Employee Retirement Income Security Act

**IMMIGRATION**
- 462 Naturalization Application
- 465 Other Immigration Actions

**BANKRUPTCY**
- 422 Appeal 28 USC 158
- 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- 820 Copyrights
- 830 Patent
- 835 Patent - Abbreviated New Drug Application
- 840 Trademark

**SOCIAL SECURITY**
- 861 HIA (1395ff)
- 862 Black Lung (923)
- 863 DIWC/DIWW (405(g))
- 864 SSID Title XVI
- 865 RSI (405(g))

**FEDERAL TAX SUITS**
- 870 Taxes (U.S. Plaintiff or Defendant)
- 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- 375 False Claims Act
- 376 Qui Tam (31 USC 3729(a))
- 400 State Reapportionment
- 410 Antitrust
- 430 Banks and Banking
- 450 Commerce
- 460 Deportation
- 470 Racketeer Influenced and Corrupt Organizations
- 480 Consumer Credit
- 490 Cable/Sat TV
- 850 Securities/Commodities/ Exchange
- 890 Other Statutory Actions
- 891 Agricultural Acts
- 893 Environmental Matters
- 895 Freedom of Information Act
- 896 Arbitration
- 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- X 1 Original Proceeding
- 2 Removed from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from Another District *(specify)*
- 6 Multidistrict Litigation - Transfer
- 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981 (42USC1981); Title VII (42USC2000); ADA (42USC12101)

Brief description of cause:
Violations of Section 1981, Title VII, the ADA, PHRA and the Philadelphia Fair Practices Ordinance.

## VII. REQUESTED IN COMPLAINT:
- ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: X Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 2/19/2021
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

[Print] [Save As...] [Reset]